## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**T.N. Incorporation Ltd.**
24th Floor, Rajanakarn Building
3 South Sathon Road
Bangkok 10120, Thailand

      **Plaintiff,**

v.

**Fidelity National Information Services, Inc.**
601 Riverside Avenue
Jacksonville FL 32204;

**Fidelity National Information Services (Netherlands) B.V.**
Teleportboulevard 110
1043 EJ Amsterdam, Netherlands;

**Fidelity Information Services (Thailand) Ltd.**
15th Floor, Empire Tower
195 South Sathorn Road
Yan Nawa, Sathorn
10120 Bangkok, Thailand
      **Defendants.**

Civil Action No. _____

**Jury Trial Demanded**

      T.N. Incorporation Ltd. ("Plaintiff," or "TNI") hereby complains of and alleges against Defendants, Fidelity National Information Services, Inc. (""FIS-US"), Fidelity National Information Services (Netherlands) B.V. ("FIS Netherlands") and Fidelity Information Services (Thailand) Ltd. ("FIS Thailand") (referred to collectively, jointly and severally herein as "Defendants" or "FIS Defendants") alleges as follows:

## PARTIES

1.      Plaintiff T.N. Incorporation Ltd., formerly known as T.N. FI Solutions Ltd., is incorporated in Thailand and has a business address of 24th Floor, Rajanakarn Building, 3 South Sathon Road, Bangkok 10120, Thailand.

2.      Upon information and belief, Defendant Fidelity National\; Information Services, Inc. (hereinafter "FIS-US") is a Georgia corporation having an address at 601 Riverside Avenue, Jacksonville FL 32204.

3.      Upon information and belief, Defendant Fidelity National Information Services Ltd. (Netherlands) B.V. (hereinafter "FIS Netherlands") is a limited company of Netherlands having an address at Teleportboulevard 110, 1043 EJ Amsterdam, Netherlands.

4.      Upon information and belief FIS Netherlands is an affiliate and/or subsidiary of FIS-US and/or is under common control with FIS-US.

5.      Upon information and belief, Defendant Fidelity Information Services (Thailand) Ltd. (hereinafter "FIS Thailand") is a Thai limited company having an address at 15th Floor, Empire Tower, 195 South Sathorn Road, Yan Nawa, Sathorn, 10120 Bangkok, Thailand.

6.      Upon information and belief FIS Thailand is an affiliate and/or subsidiary of FIS-US and/or is under common control with FIS-US.

7.      Upon information and belief, Defendant Fidelity Information Services Ltd., Fidelity National Information Services Ltd. (Netherlands) B.V. and Fidelity Information Services (Thailand) Ltd. do business as FIS.

2

8.     Upon information and belief FIS Netherlands and FIS Thailand share common ownership.

9.     Upon information and belief FIS Netherlands and FIS Thailand are alter egos of FIS-US.

10.     Upon information and belief FIS Netherlands and FIS Thailand are agents of FIS-US.

11.     Upon information and belief FIS Netherlands and FIS Thailand act under the direction, control and or supervision of FIS-US.

## JURISDICTION AND VENUE

12.     This Court has original subject matter jurisdiction over the claims in this action that relate to federal unfair competition pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, 15 U.S.C. §§ 1121 and 1125, as these claims arise under the laws of the United States and the amount in controversy is over $75,000.00.

13.     An actual justiciable controversy exists between the Parties within the meaning of 28 U.S.C. §§ 2202.

14.     The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

15.     This Court has personal jurisdiction over Defendants because Defendants have consented to jurisdiction in this court.

3

16.     In addition, this Court has personal jurisdiction over Defendants because Defendants have established minimum contacts with the forum and the exercise of jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice, and Defendants are subject to the jurisdiction of this Court under Pennsylvania's long-arm statute

10.     Venue in this jurisdiction is proper under 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

17.     TNI, through its predecessor's interest, T.N. Information Systems, Ltd., has been researching, designing, developing, implementing, installing, maintaining, and producing computer software for over 25 years.

18.     TNI is a market leader amongst large-scale banking solution providers. TNI tailors software components for banks.

19.     TNI was the first Thai company to offer IT consulting specialized in mission-critical, large-scale and complex systems.

20.     TNI is a market leader amongst large-scale banking solution providers with the most market share in Thailand in the field of core banking systems implementation.

21.     A core banking system, or core banking solution, comprises, generally, central back-end processing software of a bank that processes millions of daily banking transactions and posts updates to millions of accounts and other financial records.

22.     Core banking systems are extremely complex and typically include at least deposit, withdrawal, reporting, loan and credit processing capabilities, with

4

hundreds of interfaces to general ledger systems and reporting tools and Thai legacy banking systems.

23.     Implementing core-banking solutions are known in the banking industry to be a high risk project.

24.     The risk associated with implementing core banking systems is due to the complexity surrounding enterprise banking, the high level of sophisticated implementation and project management required, the effect on customer relationships if electronic systems are unavailable for any period of time because of implementation problems, and the various banking rules and laws in place in a particular jurisdiction.

25.     Core banking system implementations are also well known for delays and cost-overruns due to the complexities involved.

26.     In the banking industry delays or cost overruns are considered a failure in implementation.

27.     Core banking system implementations are known to have a high failure rate.

28.     Each installation of a core banking system must be customized to a particular bank's unique needs and legacy software that may have been built to support specific products or services of the bank such as mortgages or loans and tightly coupled to organizational workflow.

29.     Due to the complexity and risks of implementation, TNI has through many years of experience developed proprietary and confidential project management know how and tools tailored to the banking system in Thailand.

30.     Proprietary data and software often designed around banking products that can, in some instances, be over 40 years old, adds further complexity.

31.     Implementation of a U.S.-based or U.S.-originated core banking system based in Thailand is complicate by different laws and banking practices, customs, culture language and regulatory requirements.

32.     For over twenty-five (25) years, TNI has researched, learned, and mastered the needs of Thai banks based on, *inter alia*, Thai banking regulations and how software is used by banks as part of a core banking system in Thailand.

33.     Thai banking rules and regulations are unique, complicated and extremely strict. TNI has stayed abreast of the Thai banking rules to uphold its status as an expert in this niche field.

34.     TNI builds computer software that adheres to the strict Thai banking rules and customs.

35.     Since TNI was founded in 1989, TNI has built relationships with many Thai banks, and has worked vigorously to build and maintain an impeccable reputation. TNI's quality and specialty products and services have developed TNI into a thriving company and has created and shaped an industry.

36.     Through decades of service and successful implementations of complex software systems, TNI has built up a strong and loyal following for its products and services, including those relating to TNI technology.

37.     Because of TNI's sterling reputation in Thailand, TNI and Sanchez Computer Associates Inc. ("Sanchez") undertook discussion, on or around 2001, about utilizing TNI as Sanchez's vendor in Thailand.

38.     At the time, Sanchez was a provider of banking systems and outsourcing services for financial institutions. Sanchez had no knowledge or expertise in connection with Thailand or the Thai banking system.

39.     Sanchez's core banking system product was its Profile Software.

40.     On or around September 25, 2001, TNI entered into a series of agreements with Sanchez for the purpose of Sanchez using TNI as the distributor and implementation vendor for Sanchez's Profile Software in Thailand.   The agreements entered on or about September 25, 2001 between TNI and Sanchez were as follows:

> a. Software License agreement for Profile®/Anywhere Integrated Banking System ("Software License Agreement");
>
> b. Master Agreement for Consulting Services ("Master Agreement");
>
> c. System Integration and Distribution Agreement ("Distribution Agreement") (collectively "Profile Agreements").

41.     Each of the Profile Agreements provides for venue in Philadelphia, Pennsylvania. Each of the Profile Agreements was executed on behalf of Sanchez in

Pennsylvania, and the Profile Software was provided from Sanchez's facilities in Pennsylvania.

42.     A true and correct copy of the License Agreement (without the Schedules) is attached as Exhibit A.

43.     T.N. Information Systems Ltd. assigned all rights, title, interest, and obligations of the License Agreement to TNI.

44.     Upon information and belief, the Defendants allege Sanchez assigned all rights, title, interest, and obligations of the License Agreement to FIS-US which subsequently assigned the rights to FIS Netherlands.

45.     Pursuant to the Section 14.6 of the License Agreement, the  License Agreement and "any and all claims, disputes, and others matters in question arising out of or relating to this Agreement, or breach thereof, shall be governed by the laws of the commonwealth of Pennsylvania and shall be decided by courts of competent jurisdiction . . . located within Philadelphia, Pennsylvania."

46.     A true and correct copy of the Master Agreement is attached as Exhibit B.

47.     T.N. Information Systems Ltd. assigned all rights, title, interest, and obligations of the Master Agreement to TNI.

48.     Upon information and belief, the Defendants allege Sanchez assigned all rights, title, interest, and obligations of the Master Agreement to FIS-US which subsequently assigned the rights to FIS Thailand.

8

49.     A true and correct copy of the Distribution Agreement (without the Schedules) is attached as Exhibit C.

50.     T.N. Information Systems Ltd.  assigned all rights, title, interest, and obligations of the Distribution Agreement to TNI.

51.     Upon information and belief, the Defendants allege Sanchez assigned all rights, title, interest, and obligations of the Distribution Agreement to FIS-US which subsequently assigned the rights to FIS Netherlands.

52.     According to the terms of the Profile Agreements, TNI was responsible for the licensing of the Profile Software as well as being the vendor responsible for implementation in Thailand.

53.     According to the terms of the Profile Agreements and the practices of the Parties, TNI served as an intermediary between Sanchez and the banks in Thailand.

54.     In all cases, any risks associated with implementation of the Profile Software in a Thai bank were born solely by TNI.

55.     In Thailand, the standard contracts for software implementation have clauses with the following provisions:

      a. The implementation vendor (i.e., TNI), has unlimited liability for failure;

      b. Payment terms are fixed with no ability to alter for cost overruns even if overruns are due to customer action or inaction.

c. Performance time periods are fixed with severe penalties for late performance.

56.   Because of the nature of standard contracts for software implementation in Thailand and the amount of time and people-hours needed to implement banking software in Thailand for Thai banks, TNI is not able to make a profit from the Profile Software implementation.

57.   It is the custom and course of dealing in Thailand that the implementing vendor is compensated for the risks associated with software implementation through ongoing maintenance contracts for the implemented software. This custom and course of dealings was known by Sanchez, TNI bank customers and the Defendants.

58.   The Profile Software is based on U.S. banking customs and regulations. In addition, the Profile Software is designed to work in an English speaking environment.

59.   The governing body for banks in Thailand, the Bank of Thailand, has a large volume of local regulations that differ from other countries, including the U.S.

60.   The Profile Software also does not address local customs, culture or practices in Thailand.

61.   In order to successfully implement the Profile Software in Thailand, TNI invested substantial money, resources and time in researching, creating, developing and perfecting its own proprietary and confidential inventions, discoveries, designs, developments, methods, processes, training materials,

10

diagrams, processes, software programs, documentation, project management tools, techniques, know how, data, formulae, algorithms, designs, design concepts, models, blueprints, schematics and drawings, listings, design specifications, flowcharts, check lists, trade secrets and confidential and proprietary information, screens, reports, parameter set ups, and software designed to meet each specific Thai bank's needs and legacy systems as well as local Thailand banking laws, regulations, customs procedures and business practices ("TNI Business Solutions").

62.    TNI is the owner of the TNI Business Solutions.

63.    The TNI Business Solutions is a separate and independent work.

64.    TNI developed the TNI Business Solutions using its own developers and know-how specifically for use by its banking customers in Thailand and to address the needs of the Thai banking market.

65.    No person at Sanchez, FIS-US, FIS Thailand or FIS Netherlands assisted in authoring, creating, or developing the TNI Business Solutions.

66.    The TNI Business Solutions is not a copy, modification or derivative work of the Profile Software.

67.    The TNI Business Solutions is not based upon and does not incorporate the Profile Software.

68.    It is only possible to use the Profile Software in the Thai banking system with additional software such as that developed by TNI. Otherwise, the Profile Software cannot be used, and therefore, has no value.

11

69.     Since    2001,    TNI    successfully    oversaw    the    installation    and implementation of the Profile Software for numerous banks in Thailand, including but not limited to Government Savings Bank ("GSB"); Bank of Agriculture and Agricultural Cooperatives ("BAAC"); Kasikorn Bank ("KBank"); Islamic Bank of Thailand ("IBT"); and Krung Thai Bank ("KTB").

70.     After implementation, in accordance with the License Agreement, TNI contracted with the FIS Defendants on behalf of certain Thai banking customers (e.g., GSB, BAAC, KTB and IBT) for extended support from the FIS Defendants which was to include, among other things, direct support from the FIS Defendants as well as new Profile software releases and upgrades.

71.     TNI has built a reputation in Thailand of completing all Profile Software implementation projects on-time and on-budget which is unusual in Thailand and the banking industry.

72.     In conjunction with implementing the Profile Software, TNI has executed some of the largest bank conversions (involving tens of millions of accounts) ever executed as a single event.

73.     TNI's successful implementation of the Profile Software in Thailand has been recognized in the industry and TNI was the co-recipient with BAAC of *The Asian Banker's* "Best Core Banking Project, Thailand Award for 2012" for its successful implementation of the Profile Software for BAAC.

74.     The Profile Software, when used with the TNI Business Solutions, is the core banking solution for a majority of Thailand's largest banks.   Upon

information and belief, the Profile Software does not have similar market dominance in any other country.

75.     The FIS Defendants have previously recognized TNI's track record for successful implementation of the Profile Software as being a significant reason for the success of the Profile Software in Thailand.

76.     Banks in Thailand such as Kasikornbank have publicly recognized experience in successfully implementing the Profile Software in Thailand as a reason for selecting the Profile Software.

77.     At the request of the FIS Defendants, TNI has hosted a number of international banks in Thailand so that FIS could use TNI's successful on-schedule implementations of the Profile Software as in-person case studies, which resulted in the successful licensing of the Profile Software in the other countries.

78.     Under the License Agreement, TNI agreed to pay FIS Netherlands maintenance fees. These maintenance fees include upgrades to the licensed software. Moreover, under "EXHIBIT C TO T.N. INFORMATION SYSTEMS LTD. LICENSE AGREEMENT SERVICE LEVEL AGREEMENT," the agreement states "Sanchez anticipates that Upgrades will generally be released annually." Exhibit A, p. 20.

79.     Over the past seventeen (17) years, TNI has paid the FIS Defendants over $68 million for licenses and maintenance and support services.

80.     The last major new version of the Profile Software ("Profile Version 7") was issued in 2011.

81.     After the last major release in 2011, the FIS Defendants stopped providing new versions or major upgrades to the Profile Software.

82.     On or around 2011, the actual level of support provided by the FIS Defendants decreased substantially as the FIS Defendants cut experienced employees from its Profile Software team.

83.     Since 2010, TNI placed less than four services calls to FIS-US for support for bugs in the Profile Software, but because of lack of support from FIS, TNI resolved the issues without effective assistance from FIS.

84.     For all intents and purposes, since 2011, TNI was the sole provider of maintenance services for the Profile Software for its Thai banking customers. The FIS Defendants' role at this stage was solely to collect fees for TNI's work.

85.     On or around 2015, TNI began to express concern for the lack of upgrades and support provided by FIS Defendants.

86.     The FIS Defendants responded to TNI's concerns with promises of future enhancements to the Profile Software which were not made.

87.     Given the lack of upgrades, enhancements and support for the Profile Software, in 2015 TNI sought a reduction in the maintenance fee payments, as there was almost no return value to TNI for such payments.

88.     In response to issues raised by TNI, in 2015, FIS agreed to reduce the annual maintenance fees in 2015 and 2016.

89.     Instead of continuing with the lower adjustment, the FIS Defendants required an increase and a three year commitment from TNI at $4.5 million annually to extend the maintenance support. See Bhat email, December 11, 2017.

90.     A true and correct copy of the December 11, 2017 email is attached as Exhibit D.

91.     Despite a longstanding record of success and cooperation, without warning, the FIS Defendants notified TNI in a letter dated December 28, 2017 ("Notice Letter") that it was terminating the Master Agreement and the Distribution Agreement and would cease proving support services for the Thai bank end users covered by that agreement effective June 30, 2018.

92.     The License Agreement was not terminated.

93.     A true and correct copy of the December 28, 2017 letter is attached as Exhibit E.

94.     The Notice Letter failed to cite any basis for terminating these agreements.

95.     To date, the FIS Defendants have failed to provide any justification for the sudden and unexpected termination. TNI considers the termination wrongful, as there was no proper legal basis for the termination of the agreements.

96.     On January 12, 2018, after the FIS Defendants terminated the Master Agreement and Distribution Agreement for no apparent reason, TNI fulfilled its contractual requirement by sending the FIS Defendants three (3) discs of the FIS

15

Defendants Source Code and deleting the respective codes from all TNI working systems.

97.    A true and correct copy of the January 12, 2018 letter is attached as Exhibit F.

98.    In response to receiving the three (3) discs, FIS Thailand on January 25, 2018 demanded TNI to deliver "the source code and accompanying documentation for any of the enhancements/customizations . . . created for End Users." FIS stated, "[t]he intellectual property rights in those customizations/enhancements also belong to FIS[.]"

99.    A true and correct copy of the January 25, 2018 letter is attached as Exhibit G.

100.    TNI responded to the January 25, 2018 letter on February 2, 2018, and explained the "Bank install Development machine at bank's premises and TN[I] install the purchased copy of Profile at the site. TN[I] configure and customize Profile at bank site and TN[I] is not allowed to take copy of the system or document out from the bank premises. Simple reason is Security and Fraud Protection required from bank."

101.    A true and correct copy of the February 2, 2018 letter is attached as Exhibit H.

102.    As a result of the FIS Defendant's wrongful termination of the agreements, the FIS Defendants have directly contacted several of TNI's banking

customers. More specifically, the FIS Defendants have sent letters to TNI's customers. In these letters, FIS alleges that:

> Fidelity National Information Services (Netherlands) BV, and/or its affiliates (collectively, "FIS") owns all intellectual property rights in and to the Profile, Profile Direct, and/or Xpress software (collectively, the "Software") that you may have sublicensed through our former distributor, T.N. FI Solutions Ltd. ("TNFIS"). . . . FIS' ownership rights include any/all the intellectual property rights in and to any customizations, enhancements, modifications that may have been made to the Software created by you, TNFIS, and/or any other party.

103.   A true and correct copy of the letter is attached as Exhibit I.

104.   Upon information belief, sales personnel for the FIS Defendants have informed TNI's banking customers that "no one except FIS is allowed to touch or service Profile Software."

105.   TNI views these actions as threats to TNI's customers and represent an attempt to induce TNI customers to terminate or not renew existing customer relationships with TNI for the purpose of preventing TNI from providing consulting services relating to Thai banking software. These actions have interfered with TNI's business as well as the business of its banking customers. In addition, these threats deter TNI's historical customers from allowing TNI to service its own TNI Business Solutions. Thus, TNI is effectively blocked from servicing or otherwise accessing its own TNI Business Solutions.

106.   As a direct result of actions of the FIS Defendants, KTB and BAAC have either terminated or not renewed their maintenance agreements with TNI for the Profile Software.

107.   On or about June 8, 2018, TNI sent FIS-US a letter demanding that the FIS Defendants cease and desist: from interfering with TNI's business relationships; from claiming ownership in the TNI Business Solutions; from contacting TNI's banking customers in Thailand with overreaching claims of ownership to the TNI Business Solutions; from contacting TNI's banking customers in Thailand with claims that TNI is forbidden from providing consulting services relating to the Profile Software; and from otherwise interfering with TNI's intellectual property rights. Norcross Letter, June 8, 2018.

108.   A true and correct copy of the June 8, 2018 letter is attached as Exhibit J.

109.   The FIS Defendants' allegations of ownership of the TNI Business Solutions are not supported by the Profile Agreements.

<u>SOFTWARE LICENSE AGREEMENT</u>

110.   There have been at least twenty-nine (29) amendments to the License Agreement. The "Twenty-Ninth Amendment" became effective as of June 27, 2016.

111.   Under the License Agreement:

Licensee [(TNFS)] wishes to license from Sanchez and Sanchez wishes to license to Licensee an integrated software system (the "System") consisting of certain software that is proprietary to Sanchez as follows: PROFILE®/*Anyware* and the M database software and any other components. Licensee also wishes to receive certain software support services during the "Warranty Period" as such term is defined below. This License is also granted for the purpose of T.N. Information Systems LTD. ("Licensee") sublicensing the Licensed Software to an End User under the conditions of this Agreement.
Exhibit A, p. 1.

18

112.    In   the   "FIFTH   AMENDMENT   TO   SOFTWARE   LICENSE
AGREEMENT," effective as of June 25, 2008, FIS granted to TNI a license to
software applications including Profile Core Banking, Profile Direct Web/CSR,
Profile Direct Teller, and Profile Direct Web/Admin (collectively "Profile Software").

113.    Under paragraph 4.2 of the License Agreement, "[t]he parties
acknowledge and agree that the terms and conditions of this Agreement are not
intended to apply to Other Software nor does Sanchez assert any ownership in or
responsibility for any Other Software." Exhibit A, p. 5.

114.    "Other Software" is defined under the License Agreement as "any
application software that (a) Licensee or End User has acquired at their expense, (b)
is capable of running independently of the Licensed Software, and (c) does not
include any portion of the Licensed Software."  Exhibit A, p. 2.

115.    Any software that is part of the TNI Business Solutions is considered
to be "Other Software" under the terms of the License Agreement.

## MASTER AGREEMENT

116.    As stated in sections 13.2 – 13.3 of the Master Agreement, reproduced
below, Sanchez, and subsequently by the FIS Defendants, explicitly recognized
TNI's proprietary rights in and to TNI's "Work Product" or "Proprietary
Technology." Under paragraph 13.2 of the agreement TNI owns all rights in its TNI
Business Solutions. TNI is represented by "TNIS" in the Master Agreement.

13.2 Ownership of Work Product for TNIS Proprietary Technology. All
copyrights, patents, trade secrets or other intellectual property rights
associated with any ideas, concepts, techniques, inventions, processes,

19

or works of authorship developed or created by TNIS or its personnel during the course of performing work that incorporate or modify existing TNIS -owned technology ("Work Product for Sanchez Proprietary Technology") shall belong exclusively to TNIS and shall, to the extent possible, be considered a work made for hire for Sanchez within the meaning of Title 17 of the United States Code. Sanchez assigns to TNIS all right, title, or interest that Sanchez may have in Work Product for TNIS Proprietary Technology. Upon request of TNIS, Sanchez shall take reasonable further actions, including the execution and delivery of instruments of conveyance, as may be appropriate to give effect to this assignment in Work Product for TNIS Technology. TNIS grants to Sanchez a non-exclusive, irrevocable, perpetual, royalty-free, worldwide right to use, copy, modify, and distribute, and allow others to do the same, for Customer internal use only, any Work Product for TNIS Proprietary Technology as reasonably necessary for Sanchez and its personnel to satisfy obligations to Customers to whom TNIS provided services on Sanchez's behalf under this Agreement and SOW (s) under this Agreement[.]

13.3 Ownership of Work Product for other than Proprietary Technology. All copyrights, patents, trade secrets or other intellectual property rights associated with any ideas, concepts, techniques, inventions, processes or works of authorship developed or created by Service Provider or its personnel during the course of performing work under this Agreement other than the Work Product for Sanchez/ TNIS Proprietary Technology, above, shall be owned by Service Provider; and Service Receiver, or Customer if specified in the relevant SOW, shall be granted a nonexclusive, non-transferable, royalty-free right to use such Deliverables, solely for that Customer's internal use or solely for Service Receiver's internal use, as the case may be.

Exhibit B, p. 4.

117.   TNI has developed original software for Thai banking customers which is part of the TNI Business Solutions. TNI is the owner, developer, and proprietor of its originally authored software. TNI Business Solutions are currently utilized by several Thai banks, including banks that the FIS Defendants put on notice regarding FIS Defendant's claims of ownership of certain software.

20

118.   TNI has developed proprietary software, the TNI Business Solutions, for its banking customers in Thailand that is wholly separable and independent from the Profile Software.

119.   TNI developed this software using its own developers and know-how specifically for use by its banking customers in Thailand. No person at the FIS Defendants or Sanchez assisted in authoring, creating, or developing the TNI Business Solutions.

120.   TNI has never transferred its ownership rights in the TNI Business Solutions to the FIS Defendants under any agreement. These rights include the rights in all trade secrets and proprietary information embodied by or in the TNI Business Solutions. TNI owns and maintains ownership in all rights in TNI Business Solutions.

121.   Since the Profile Agreements were entered into in 2001, TNI has been an exemplary business partner to Sanchez and the FIS Defendants.

122.   During its partnership, TNI has grown and developed the business of the FIS Defendants in Thailand. The expansion of the FIS Defendants' business was only possible due to TNI's tireless efforts and service, its implementation of its expertise in connection with the Thai banking software, its intimate knowledge of Thai banking regulations and customs, and TNI's reputation and relationships with the various Thai banks.

123.   By riding TNI's coattails, the FIS Defendants have enormously benefited as a result of TNI's diligent work, while providing no support or efforts.

21

124.    Because of TNI's efforts and due to the TNI Business Solutions, know-how and services, the Profile Software is currently the core banking software provider of choice for the majority of the largest Thai banks.

125.    The FIS Defendants has provided minimal, if any, support services to TNI.

126.    Upon information and belief, the FIS Defendants terminated the Master Agreement and Distribution Agreement for the sole purpose of supplanting TNI as the provider of support and consulting services for the Profile Software in Thailand.

127.    In furtherance of that scheme, the FIS Defendants have intentionally misrepresented to at least, GSB, BAAC, IBT and KTB, its ownership rights in the TNI Business Solutions and other TNI intellectual property as well as TNI's right to provide support and consulting services for the Profile Software and the TNI Business Solutions.

128.    As direct and proximate results of the FIS Defendants' actions and misrepresentations, the FIS Defendants have unjustly usurped TNI as the supplier of maintenance and consulting services for the Profile Software in Thailand.

129.    As a direct and proximate result of the FIS Defendants' actions and misrepresentations, TNI has been damaged.

130.    As a direct and proximate result of the FIS Defendants' actions and misrepresentations, TNI has been irreparably harmed.

## COUNT I
## DECLARATORY JUDGMENT THAT TNI IS AUTHORIZED TO PROVIDE CONSULTING SERVICES TO ITS EXISTING BANK CUSTOMERS

131.   TNI repeats and re-alleges the allegations of Paragraphs 1-130 of this Complaint as if set forth fully herein.

132.   The FIS Defendants assert that TNI is no longer permitted to provide consulting services to Thai banking customers for which it previously provided implementation and software maintenance services for the Profile Software.

133.   Providing service to the Profile Software will not violate any right of the FIS Defendants. To the extent that any Thai banking customers have a license to the Profile Software, such a banking customer has the right to have the Profile Software serviced on its behalf by a party of its choosing.

134.   Providing service to the TNI Business Solutions will not violate any right of the FIS Defendants.

135.   The Master Agreement by its terms in Section 1.0 provides that "… TNIS and Sanchez may provide consulting services to a customer by contracting independently with a customer, unless mutually otherwise agreed in writing." Exhibit B, p. 1.

136.   By the terms of the Profile Agreements, TNI is permitted to provide consulting and maintenance services for the Profile Software. Based upon the foregoing, TNI seeks a declaratory judgment that TNI is authorized to provide consulting services to its bank customers regarding the Profile Software and TNI's own TNI Business Solutions previously implemented and maintained for such customers by TNI.

23

137.   Because of the facts described in the foregoing paragraphs, an actual controversy and justiciable controversy of sufficient immediacy exists between the parties as to whether TNI is authorized to provide consulting services to its bank customers regarding the Profile Software and TNI's Software previously implemented and maintained for them by TNI.

## COUNT II
## DECLARATORY JUDGMENT THAT TNI IS THE OWNER OF ALL INTELLECTUAL PROPERTY IN THE TNI BUSINESS SOLUTIONS

138.   TNI repeats and re-alleges the allegations of Paragraphs 1-137 of this Complaint as if set forth fully herein.

139.   The FIS Defendants claim ownership rights in any customizations, enhancements or modifications to the Profile Software that were made or created by TNI.

140.   The TNI Business Solutions is not a customization, enhancement or modification of the Profile Software. Rather, it is an independent work of authorship that can operate independently of the Profile Software.

141.   Based upon the foregoing, TNI seeks a declaratory judgment that TNI is the owner of all intellectual property rights in the TNI Business Solutions.

142.   Because of the facts described in the foregoing paragraphs, an actual controversy and justiciable controversy of sufficient immediacy exists between the parties as to whether TNI is the owner of intellectual property rights in the TNI Business Solutions.

## COUNT III
## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

143.   TNI repeats and re-alleges the allegations of Paragraphs 1-142 of this Complaint as if set forth fully herein.

144.   TNI has the opportunity to provide consulting services to its former and existing banking customers relating to the Profile Software and the TNI Business Solutions.

145.   Agents and employees of the FIS Defendants have, without justification or privilege, made false statements regarding TNI's rights in the TNI Business Solutions and TNI's rights under the Profile Agreements to provide future consulting and maintenance services relating to the Profile Software and the TNI Business Solutions.

146.   The purpose of the false statements by agents and employees of the FIS Defendants is to prevent TNI's banking customers from entering into new contracts with TNI for providing consulting and maintenance services for the Profile Software and the TNI Business Solutions.

147.   Because of the facts described in the foregoing paragraphs, TNI has suffered monetary damages as well as irreparable harm to its business and business reputation among its former, current and prospective customers.

## COUNT IV
## TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONSHIPS

148.   TNI repeats and re-alleges the allegations of Paragraphs 1-147 of this Complaint as if set forth fully herein.

25

149.   TNI has an existing contractual relationship with the BAAC for which it implemented the Profile Software and has performed consulting and maintenance services since April 27, 2011.

150.   TNI has an existing contractual relationship with the KTB for which it implemented the Profile Software and has performed consulting and maintenance services since August 26, 2002.

151.   Agent and employees of the FIS Defendants have, without justification or privilege, made false statements to the KTB and BAAC regarding TNI's rights in the TNI Business Solutions and TNI's rights under the Profile Agreements to provide future consulting and maintenance services relating to the Profile Software and the TNI Business Solutions.

152.   The purpose of the false statements by the BAAC and KTB was and is to deter the  banks from renewing existing contracts with TNI for providing consulting and maintenance services for the Profile Software and the TNI Business Solutions.

153.   Because of the facts described in the foregoing paragraphs, TNI has lost contracts and suffered monetary damages as well as irreparable harm to its business and business reputation among its former, current and prospective customers.

## COUNT V
## TRADE AND COMMERCIAL DISPARAGEMENT

154.   TNI repeats and re-alleges the allegations of Paragraphs 1-153 of this Complaint as if set forth fully herein.

26

155. Agent and employees of the FIS Defendants have, without justification or privilege, made false statements regarding TNI's rights in the TNI Business Solutions and TNI's rights under the Profile Agreements to provide future consulting and maintenance services relating to the Profile Software and the TNI Business Solutions.

156. The purpose of the false statements by agents and employees of the FIS Defendants is to prevent TNI's banking customers from entering into new contracts with TNI for providing consulting and maintenance services for the Profile Software and the TNI Business Solutions.

157. Because of the facts described in the foregoing paragraphs, TNI has suffered monetary damages as well as irreparable harm to its business and business reputation among its former, current and prospective customers.

## COUNT VI
## PROMISSORY ESTOPPEL

158. TNI repeats and re-alleges the allegations of Paragraphs 1-157 of this Complaint as if set forth fully herein.

159. Upon information and belief, the FIS Defendants, through their duly authorized officers, agents and representative, or any one of them, as acting within the scope of their employment and authority, deliberately made and/or permitted to be made representations to TNI, and later reiterated, which they knew or should have known were false and misleading as follows:

    a. That the FIS Defendants understood the unique nature and structure of Thai software implementation contracts;

27

b. Thai banks require that the company performing the software implementation, i.e. TNI, provide a flat fee for the implementation and that TNI absorb all cost overruns and risks associated with delay or failure

c. That the FIS Defendants understood that due to the complexity and scope of the Profile Software implementation for Thai banking customers, the Profile Software implementation was not profitable for TNI and in some cases was unprofitable;

d. That the FIS Defendants understood that the only profit associated with Profile Software implementation was related to the maintenance contracts and consulting contracts entered into with the Thai banks;

e. That the FIS Defendants agreed that it would regularly upgrade the Profile Software in return for the licenses and maintenance fees paid by TNI;

f. That the FIS Defendants and Sanchez agreed that they would not terminate any agreements with TNI pertaining to maintenance services and updates for the Profile Software for a reasonable period of time to allow TNI to recoup its investment in the Profile Software implementation for each bank;

160. Upon information and belief, it is alleged that the representations described in paragraph 159 above were false and misleading, and were intended to

28

be such by the FIS Defendants who approved and authorized such representations with the expectation that they would be communicated to TNI and would influence his conduct, in that one or more of the above named officers, agents and representatives of TNI:

      a. knew or believed that the matters were not as they were represented to be; or

      b.  intended to disavow the promises and representations made; or

      c.  did not have the confidence in the accuracy of the representations that were made, permitted and implied;

      d. knew that she did not have a basis for the representations that she stated or implied.

161.  TNI was induced by and justifiably relied upon the misrepresentations described in paragraph 159 above in entering into Profile Software implementation agreements with the Thai Banks;

162.  TNI's justifiable reliance upon the misrepresentations described in paragraph 159 above, was a direct and proximate cause in determining TNI's actions which resulted in his injuries, losses and damages.

163.  As a direct and proximate result of the FIS Defendant's misrepresentations and TNI's reliance on them, TNI has been injured and damaged by loss of his employment, earnings, other employment benefits, moving and relocation expenses, expenses in seeking further employment, the incurrence of debt and other costs and losses associated with his obtaining residence in the area, and

has suffered and continues to suffer severe emotional distress, mental suffering and pain, embarrassment and humiliation, anguish and anxiety. As a direct and proximate result of these misrepresentations, and his reliance on them, TNI sustained other injuries as may be discovered. TNI demands damages from the FIS Defendants for all of said injuries.

164.   In light of the FIS Defendant's knowing, willful, deliberate and bad faith misrepresentations and outrageous conduct done in contempt of TNI's rights, TNI believes and therefore avers that he is entitled to an award of punitive damages, and demands same from the FIS Defendants.

## COUNT VII
## UNJUST ENRICHMENT

165.   TNI repeats and re-alleges the allegations of Paragraphs 1-164 of this Complaint as if set forth fully herein.

166.   As a result of the practices of the FIS Defendants described above, the FIS Defendants have been unjustly enriched.

167.   If the FIS Defendants are permitted to continue with their conspiratorial and unlawful acts and conduct, the valuable goodwill of TNI's business will be irreparably jeopardized, impaired or damaged; its services will lose their market; its business will be severely damaged; and the FIS Defendants will be unjustly enriched because of their improper and tortious conduct.

## COUNT VIII
## CONVERSION

168.   TNI repeats and re-alleges the allegations of Paragraphs 1-167 of this Complaint as if set forth fully herein.

30

169.   The FIS Defendants knowingly and without TNI's consent has asserted ownership of the TNI Business Solutions.

170.   TNI has made demands on the FIS Defendants to disavow ownership of the TNI Business Solutions.

171.   The FIS Defendants continue to assert ownership of the TNI Business Solutions.

172.   The FIS Defendants actions are causing TNI immediate, continuing irreparable harm.

173.   As the direct and proximate result of the FIS Defendants actions as described above, TNI has suffered and is continuing to suffer immediate and irreparable harm, which harm is likely to continue and cannot adequately be remedied at law.

## COUNT IX
## TRESPASS TO CHATTELS

174.   TNI repeats and re-alleges the allegations of Paragraphs 1-173 of this Complaint as if set forth fully herein.

175.   At all-times mentioned in this Complaint, TNI had legal title of the TNI Business Solutions.

176.   The FIS Defendants intentionally interfered with TNI's use or possession of the TNI Business Solutions.

177.   The FIS Defendants trespass caused damage to TNI.  As a result, FIS caused TNI's property to greatly diminish in value and has deprived TNI of its intended use of its software.

31

178.   TNI is entitled to recovery any and all damages it sustained as a result of such trespass.

179.   The FIS Defendants' trespass have caused irreparable harm to TNI for which no remedy at law is adequate to compensate it for the injuries inflicted and threatened.

## COUNT X
## MISAPPROPRIATION OF PROPERTY

180.   TNI repeats and re-alleges the allegations of Paragraphs 1-179 of this Complaint as if set forth fully herein.

181.   TNI has made a substantial investment of time, effort and money into creating the TNI Business Solutions.

182.   The FIS Defendants have no ownership rights in the TNI Business Solutions and contributed no time, effort or money into creating the TNI Business Solutions.

183.   The FIS Defendants knowingly and without TNI's consent asserted ownership of the TNI Business Solutions.

184.   TNI has made demands on the FIS Defendants to disavow ownership of the TNI Business Solutions.

185.   The FIS Defendants continue to assert ownership of the TNI Business Solutions.

186.   The FIS Defendants' actions are causing TNI immediate, continuing irreparable harm and injury to TNI.

187.   As the direct and proximate result of the FIS Defendant's actions as described above, TNI has suffered and is continuing to suffer immediate and irreparable harm, which harm is likely to continue and cannot adequately be remedied at law.

## COUNT XI
## BREACH OF CONTRACT (SOFTWARE LICENSE AGREEMENT)

188.   TNI repeats and re-alleges the allegations of Paragraphs 1-187 of this Complaint as if set forth fully herein.

189.   According to Section 4.2 of the Software License Agreement, "<u>Other Software</u>: The parties acknowledge and agree that the terms and conditions of this Agreement are not intended to apply to the Other Software nor does Sanchez assert any ownership in or responsibility for any Other Software."

190.   Contrary to the provisions of Section 4.2 of the Software License Agreement, the FIS Defendants have taken a sweeping position with respect to ownership of the TNI Business Solutions.

191.   Asserting any ownership right in the TNI Business Solutions that includes Other Software violates at least Section 4.2 of the Software License Agreement. This violation is directly caused by the FIS Defendants' actions in contacting TNI's banking customers and alleging ownership of the TNI Business Solutions.

192.   As the direct and proximate result of the FIS Defendant's actions as described above, TNI has suffered and is continuing to suffer immediate and

33

irreparable harm, which harm is likely to continue and cannot adequately be remedied at law.

## COUNT XII
## FEDERAL UNFAIR COMPETITION

193.    TNI repeats and re-alleges the allegations of Paragraphs 1-192 of this Complaint as if set forth fully herein.

194.    This cause of action arises under the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

195.    Agent and employees of the FIS Defendants have, without justification or privilege, made false statements regarding TNI's rights in the TNI Business Solutions and TNI's rights under the Profile Agreements to provide future consulting and maintenance services relating to the Profile Software and the TNI Business Solutions.

196.    The purpose of the false statements by agents and employees of the FIS Defendants is to prevent TNI's banking customers from entering into new contracts with TNI for providing consulting and maintenance services for the Profile Software and the TNI Business Solutions.

197.    Upon information and belief, FIS Defendants false statements disparages TNI's products and services.

198.    Upon information and belief, the FIS Defendants false statements damages the goodwill of TNI and its products and services.

199.    Upon information and belief, the FIS Defendants false statements constitute unfair competition, under the Lanham Act, 15 U.S.C. § 1125(a).

34

5526229-1

200.   As a result of said unfair competition and false advertising, TNI  has suffered and continues to suffer irreparable injury, for which TNI has no adequate remedy at law.

## COUNT XIII
## STATE UNFAIR COMPETITION

201.   TNI repeats and re-alleges the allegations of Paragraphs 1-200 of this Complaint as if set forth fully herein.

202.   Defendants' aforementioned conduct constitute unfair competition under Pennsylvania law.

203.   As a result of said unfair competition and false advertising, TNI  has suffered and continues to suffer irreparable injury, for which TNI has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PRAYS FOR RELIEF from the actions and conduct of Defendants as follows:

A.   Entry of a declaration of judgment that Plaintiff is authorized to provide consulting services for the Profile Software to its bank customers;

B.   Enter a permanent injunction against the Defendants from preventing TNI from providing consulting services for the Profile Software to its bank customers;

5526229-1

C.      Entry of a declaration of judgment that Plaintiff is authorized to provide maintenance services for the Profile Software to its bank customers;

D.      Enter a permanent injunction against the Defendants from preventing TNI from providing maintenance services for the Profile Software to its bank customers;

E.      Entry of a declaration of judgment that Plaintiff is the owner of the TNI Business Solutions;

F.      Enter a permanent injunction against the Defendants from asserting ownership of the TNI Business Solutions;

G.      Award damages adequate to compensate TNI for the damages it has incurred;

H.      Award TNI costs, expenses, and attorneys' fees in this action under any and all applicable statutes; and

I.      Such other relief, including other monetary and equitable relief, the Court deems just and proper.

5526229-1

## JURY DEMAND

Plaintiff demands trial by a jury on all claims to which it is entitled.

T.N. FI-Solutions Ltd.

Date: December 26, 2018    By:

John J. O'Malley
PA ID No. 68222
Michael F. Snyder
PA ID No. 76386
**Volpe and Koenig, PC**
30 South 17th Street, Suite 1800
Philadelphia, PA 19103
215.568.6400
JOMalley@vklaw.com
MSnyder@vklaw.com

*Attorneys for Plaintiff*
*T.N. Incorporation Ltd.*

37

5526229-1