IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| T.N. INCORPORATION, LTD,<br>Plaintiff,<br><br>v.<br><br>FIDELITY INFORMATION SERVICES,<br>INC., FIDELITY NATIONAL<br>INFORMATION SERVICES,<br>(NETHERLANDS) B.V., FIDELITY<br>INFORMATION SERVICES<br>(THAILAND) LTD., AND FIDELITY<br>INFORMATION SERVICES, LLC,<br>Defendants. | CIVIL ACTION<br><br><br><br>NO.  18-5552 |

## MEMORANDUM OPINION

In 2001, Plaintiff T.N. Incorporation Ltd. ("TNI") agreed, over the course of multiple

contracts, to distribute and implement software for a company based in Thailand.  That company

was later acquired by Defendant Fidelity Information Services, LLC, and control over the

agreements was transferred to Defendants Fidelity National Information Services (Netherlands

B.V.) and Fidelity Information Services (Thailand) Ltd. (all Defendants collectively "FIS").  TNI

filed a Complaint against FIS on December 26, 2018, raising various claims stemming from the

contracts and the parties' business transactions, and later filed an Amended Complaint.  On

February 14, 2020, FIS answered and filed numerous counterclaims of their own, including three

counts for breach of contract.  TNI moves to dismiss the contract counterclaims, alleging that

they are subject to binding arbitration agreements.

Between the filing of the Complaint and the motion now pending, however, significant

litigation and negotiation occurred.  First, in February 2019, the parties entered into an

agreement that a judgment rendered by this Court would be enforceable in any other jurisdiction, including foreign jurisdictions (the "Enforceability Agreement").  The parties also agreed that claims would not be brought in other forums until this case was ended.  The parties next reached an agreement regarding an Amended Complaint.  Specifically, FIS had filed a motion to dismiss TNI's Complaint; in exchange for withdrawing its motion and consenting to TNI's filing of an Amended Complaint, which FIS would answer, TNI agreed to bifurcate the proceeding (the "Bifurcation Agreement").  Stated simply, the Bifurcation Agreement provided that TNI's declaratory judgment claims and its own breach of contract claim, along with "any counterclaims involving one or more of the Parties and related to the ownership of and rights to software or technology associated with the Profile Agreements, including counterclaims sounding in contract . . ." would proceed to judgment as Phase I claims before any action was taken on the remaining claims (Phase II claims).

Reflecting this Agreement, the parties filed a partially agreed upon Joint Motion to Bifurcate.  While the bifurcation motion was pending, TNI filed the present Motion to Dismiss. Then, adding to the lengthy procedural history, this case was re-assigned three times (due to no fault of the parties), finally ending up before this Court which granted the Motion to Bifurcate, ruling that Counts I, II, and XI of the Amended Complaint, and Counts I through VII of the Counterclaim—inclusive of the contract counterclaims underlying the present motion—will proceed in Phase I.[1]

---

[1] TNI argued that the three contractual counterclaims should proceed in Phase II.  The Court, however, rejected its position and agreed with FIS that they should proceed in Phase I.

## DISCUSSION

TNI contends that FIS's three breach of contract counterclaims must be dismissed because they are subject to binding arbitration agreements.[2]  Each claim is for a breach of a different contract—the "Software License Agreement," the "Master Agreement for Consulting Services," and the "System Integration and Distribution Agreement"—each of which contains its own arbitration provision.  Although TNI invokes enforcement of the arbitration agreement as the basis for dismissing the claims it does not move to compel arbitration.  *See Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 147 (3d Cir. 2015) (noting that if a party requests only to dismiss a complaint, it will not be construed as a motion to compel arbitration).  FIS argues that TNI, through actions it has taken in this litigation, has waived its right to enforce the arbitration provisions.

Congress passed the Federal Arbitration Act ("FAA") to counteract "the traditional judicial hostility to the enforcement of arbitration agreements."  *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (internal quotation omitted).  It thus established a "strong federal policy in favor of arbitration."  *Id.*  Nonetheless, arbitration provisions are not automatically enforceable, and enforcement may be denied if a "party has acted inconsistently with the right to arbitrate."  *Id.* at 117.  In such a circumstance, if there is a "sufficient showing of prejudice" on behalf of the party seeking to avoid arbitration, then the arbitration provision will be deemed waived and not enforced.  *Id.*

To assist in deciding whether a party waived its right to invoke the arbitration agreement,

---

[2] To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  All "allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant" must be taken.  *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).

the Third Circuit has identified "six nonexclusive factors," known as the *Hoxworth* factors. *Id.* (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926-27 (3d Cir. 1992)). Courts must consider: (1) the timeliness of the invocation of arbitration; (2) the extent to which the party invoking arbitration has contested the merits of the opposing party's claims; (3) whether the party urging application of the arbitration agreement informed its adversary of its intent to do so prior to seeking to remove the claims from the court proceeding; (4) the extent to which a party invoking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and, (6) the extent to which the parties have engaged in discovery. Ultimately, however, the determination of whether a party has waived its right to invoke arbitration is "necessarily case specific and [] depends on the circumstances and context of each case." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011). Thus, the utility of the factors may vary based on the specific case at bar. *See, e.g.*, *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 295 (3d Cir. 2016) (noting that many of the *Hoxworth* factors were inapplicable in a case where, due to changes in binding caselaw, it would have been futile for the party to have invoked the arbitration agreement any sooner than it did). Each factor is considered in turn.

The first factor requires consideration of the timeliness of the motion invoking arbitration. When a party fails to raise arbitration in a timely manner following the filing of the claims, that points towards finding waiver. *See, e.g.*, *Pharmacy Benefit*, 700 F.3d at 118 (noting that defendant failed to file its motion compelling arbitration until over ten months after the complaint was filed). Here, arbitration was invoked just one month after the counterclaims were filed. Likewise, as to factor two, whether the party contested the merits before moving to arbitrate, the motion to dismiss on arbitration grounds was the only motion TNI filed regarding the counterclaims. It has not contested the merits. *Compare with id.* (noting that, prior to

4

seeking arbitration, the defendant filed thirty-eight pages of briefing on a motion to dismiss for failure to state a claim that directly discussed the merits).  Both of these factors weigh in TNI's favor.

Factor three asks whether the party seeking to invoke arbitration adequately informed the other parties in advance.  If this factor is only analyzed relative to when FIS filed their counterclaims—as TNI argues—then it appears TNI timely notified FIS of its intentions.  The counterclaims were filed on February 14, 2020, and at least as of February 27, when the parties filed their joint partially agreed upon Motion to Bifurcate, TNI made clear it believed some of the counterclaims could be arbitrable, approximately two weeks before it filed the motion.  But here, the broader context of the litigation becomes more relevant.  TNI was on notice that FIS intended to file numerous counterclaims, including counterclaims that sound in contract—this is evident in the Joint Bifurcation Agreement the parties reached in the wake of FIS's motion to dismiss, which explicitly provided that FIS would not object to the filing of an Amended Complaint, and would answer, plus raise counterclaims.  FIS's consent was predicated on bifurcating the case, including bifurcating "any counterclaims . . . related to the ownership of and rights to software or technology . . .  including counterclaims sounding in contract," which would proceed in Phase I.  While TNI may not have known the specifics of FIS's breach of contract allegations until the counterclaims were actually filed, it nonetheless was on notice during the extensive negotiations the parties engaged in—and during the extensive filings the parties made with this Court—that the arbitration clauses may be applicable, but made neither FIS nor this Court aware of its intention to potentially invoke arbitration to dismiss the claims.  This factor thus weighs in FIS's favor.

Factor four, which assesses non-merits motion practice, and five, which considers the

party's acquiescence to pretrial orders, likewise must both be considered in context. Since the filing of the counterclaims, the docket reflects both non-merits motion practice and acquiescence to this Court's policies and procedures; specifically, the parties filed the joint Motion to Bifurcate, filed a Joint Proposed Case Management Plan, participated in a pretrial conference, and submitted stipulations governing electronic discovery. A salient consideration is the Bifurcation Agreement which explicitly contemplated counterclaims would be filed. But at no point while engaging in all of those motions and stipulations did TNI raise the possibility of arbitration. Thus, both of these factors, too, weigh in FIS's favor. *See, e.g.*, *Pharmacy Benefit*, 700 F.3d at 119.

Finally, factor six looks to discovery. The parties concede that no meaningful discovery has taken place; fact discovery does not close until the end of April 2021 (although FIS alleges it has engaged in extensive preparation for discovery). While this factor does weigh in TNI's favor, it is not dispositive to the analysis as to whether there has been extensive discovery: waiver can still be inferred even where no discovery has taken place. *See Pharmacy Benefit*, 700 F.3d at 120.

In sum, three factors weigh in TNI's favor and three in FIS's favor. But these factors are "nonexclusive," none have binding weight, and not all of them need to be present in order to find waiver. *Nino v. Jewelry Exch., Inc*., 609 F.3d 191, 209 (3d Cir. 2010). Instead, waiver is determined by the circumstances and context of the specific case, *id.*, and the "touchstone" is whether the party against whom arbitration is sought will suffer prejudice, *Pharmacy Benefit*, 700 F.3d at 117. Here, the strength of the interests at play reflected in factors three, four, and five outweigh the others. This case entails a highly litigated, multi-issue, complex suit that involves a years-long business relationship, multiple contracts, and two foreign jurisdictions.

Reflecting its complexity, the parties extensively negotiated plans to manage this case in the most efficient manner possible.  To that end, they agreed that all other claims would be tolled pending resolution of the Phase I claims before this Court.  They also agreed that any judgment rendered by this Court would be enforceable in Thailand and other future proceedings.  And they agree that all claims *and counterclaims* would be handled through a judicially approved bifurcation scheme.  This Court, even in the short time that this case has been before it, heard argument on that bifurcation motion, approved FIS's request to allow its contractual counterclaims to proceed as Phase I, and issued multiple other orders managing this case.

TNI now, despite the settled expectations (up until the time it filed this motion) of FIS and this Court that all issues would be resolved by this Court in this proceeding and be binding in future ones, seeks to, in effect, put resolution of three of FIS's counterclaims into limbo—it is not seeking to compel arbitration, but instead simply to force FIS to await resolution of claims this Court has already determined should go forward in Phase I.  A party may not "use arbitration to manipulate the legal process and in that process waste scare judicial resources."  *Gray Holdco*, 654 F.3d at 454-55.  Arbitration "is meant to streamline the proceedings, lower costs, and conserve private and judicial resources."  *Nino*, 609 F.3d at 209.  None of those purposes are fulfilled when, as here, both the parties' and the Court's settled expectation is that that this case will resolve all pending disputes between the two parties in one streamlined, bifurcated proceeding.  Being forced to arbitrate (or suspend, pending possible arbitration) three of its counterclaims, after FIS negotiated and litigated this case with the expectation that it could resolve *all* of its disputes before this Court, would cause it significant prejudice.  Combined with the fact that dismissing the claims would waste this Court's scarce judicial resources, which it has expended to manage this case as one bifurcated proceeding, TNI has waived its right to

arbitrate the counterclaims.

TNI's motion to dismiss shall be denied.  An appropriate order follows.


**August 19, 2020**                           **BY THE COURT:**


                                    **/s/Wendy Beetlestone, J.**
                                    _____
                                    **WENDY BEETLESTONE**